## DILLARD & COFFIN v. HARRIS BRENNER.

ATTACHMENT. Dealing in futures. Agency. Undisclosed principal. Code 1892, § 129 (9).

Where, on the trial of an attachment suit, it appears that the defendant has purchased in his own name cotton future contracts, or "futures," within six months next before the suing out of the attachment, a peremptory instruction to find that the attachment was rightfully sued out should be given, at the request of the plaintiff, although the two purchases made by defendant were for an undisclosed principal, the money employed in one of them being that of his principal, and in the other his own. Richter v. State, 63 Miss., 304, cited. Code 1892, § 129 (9).

FROM the circuit court of the second district of Coahoma county.

HON. R. W. WILLIAMSON, Judge.

The opinion states the case.

*John W. Cutrer*, for appellant.

The code of 1892 establishes as a ground of attachment the dealing in, buying or selling, directly or indirectly, future contracts or futures. Section 129 (9). Further than that, the statutes make the act criminal, and punish it by fine and imprisonment. Code 1892, §§ 1120, 1121.

The interdiction of the law is still further extended, and no action in the courts of this state can be maintained for the enforcement of any contract of the character alluded to. Code 1892, § 2117.

The appellant admitted having bought or having dealt in " cotton futures." In answer to a question on direct examination: " Did you buy or sell any future contracts within six months before the suing out of this attachment?" he says: " I went to Mr. Wildberger's house in the evening, and told him I wanted two hundred bales of (futures) cotton, and I handed him the check for it—$200—the next morning." Then, subsequently, he went in $300 more. He turned over to Wildberger, in December, 1892 (the attachment was in January, 1893), a $300 fire insurance policy which had matured, and, in his own language, " sold it to Wildberger in payment of losses on cotton futures in December, 1892." " Wildberger received it in settlement of the $300 loss on cotton." This testimony shows conclusively that the appellee was within the ban of the statute. He was not only dealing in and buying futures, but doing so on his own account. His own means went into the transaction, and he is doubly convicted. There is no authority directly in point, but we cite one that is strong in its analogy. We refer to *Marks* v. *State*, 71 Miss., 206. The appellant, Marks, was a member of the board of supervisors of Quitman county, and had been convicted of buying county warrants, in violation of § 1239 of the code of 1892. The proof showed that he had bought solely for, and as the agent of, one McGinnis. It was held that, inasmuch as the

record showed that his means had gone to effect the purchase, he was guilty as charged.

The statutes condemnatory of the dealing in or buying of futures are not less stringent than that under which Marks was condemned, and therefore it was immaterial and incompetent to prove who appellee was buying for, in justification of his conduct, and to excuse him from the operation of the attachment statute on the subject.

*W. V. Sullivan*, on the same side,

Filed a brief in which other assignments of error than that involved in the opinion are discussed.

Argued orally by *J. W. Cutrer*, for the appellant.

COOPER, C. J., delivered the opinion of the court.

Accepting as true the testimony delivered by the defendant himself, the court should have given the peremptory charge for the plaintiffs in attachment.

The defendant, within six months next before the suing out of the attachment, gave to one Wildberger a sum of money, and instructed him to invest the same in the purchase of "cotton futures," which Wildberger did. The defendant now says that in regard to this transaction he was acting as the agent for one Dreyfus, and therefore Dreyfus, and not he, was the dealer in the contract for "futures." But it is conceded that Wildberger was not informed that the contract was being made for Dreyfus. He understood that the defendant was the purchaser, and undoubtedly would have been entitled to look to him for indemnity against any losses that resulted from the transaction, if the contract had been a lawful one.

In *Richter* v. *State* (63 Miss., 304), the appellant was convicted of selling intoxicating liquor to an infant. His defense was that the infant was, in the purchase, acting as agent for an adult principal. We held that, since the fact that the infant

was acting for another was not disclosed to the defendant, the sale was to the infant.

Wildberger testifies that, in addition to the sum of $200 given him by the defendant, in November, to be invested in the purchase of cotton futures, the defendant, in December, turned over to him $300 collected from one Maddox, in payment of losses that had been sustained in the November contract. The defendant says that this money, confessedly his, was paid as the purchase price of other "future contracts," but this contract, he also says, was also made in behalf of his undisclosed principal, Dreyfus. And so, according to the defendant's testimony, he made in his own name two contracts for cotton futures, in one of which he furnished the money from his own means, and in neither of which was his principal disclosed. Under these circumstances he was personally bound, if anyone was. The money invested was put to risk, and he was liable to attachment, and so the court should have instructed the jury.

*Reversed and remanded.*